UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| WILLIE LEE HAGOOD, | ) | Civil Action No.: 4:15-cv-1653-JMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| OFC. LIEUTENANT ROBERT MILLER, | ) | |
| WARDEN CECILIA REYNOLDS, MRS. | ) | |
| QUINTINA REMBERT, and OFC. SGT. | ) | |
| RENNICK, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**I.     INTRODUCTION**

Plaintiff, who is proceeding pro se, brings this action presumably pursuant to 42 U.S.C. § 1983. In his complaint, he states that he is attempting to litigate issues of "administrative negligence, slander, harassment, [and] failure to train guards properly/professional." Compl. p. 2. Presently before the court is Defendants' Motion for Summary Judgment (Document # 37). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment could result in the motion being granted, resulting in dismissal of his claims. After an extension of time granted by the undersigned, Plaintiff filed his Response (Document # 44), to which Defendants filed a Reply (Document # 45). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. This report and recommendation is entered for review by the district judge.

**II.     FACTS**

Plaintiff has been incarcerated since 2002 after being convicted of criminal sexual conduct, 2nd degree, for the rape of a twenty-year-old male. See State v. Hagood, Op. No. 2006-UP-043 (Ct. App. Filed January 18, 2006). Plaintiff was sentenced to 16 years imprisonment, and his projected release date is April 23, 2016. See Inmate Search Detail Report for Willie Lee Hagood (151898) (Ex. 6 to Def. Motion).

Plaintiff alleges that Defendant Lieutenant Miller knew of an excessive risk to Plaintiff's health and safety due to the assaults that kept occurring as a result of being "falsely accused from the incident that occurred on December 22, 2006."[1] Compl. p. 3. Plaintiff alleges that Miller never inquired about why he was having problems. He further alleges that, while Miller was on leave, several of his "much favored homosexual and transsexual inmates" were moved out of Miller's dorm, and Miller blamed Plaintiff. As a result, Miller started attacking Plaintiff himself, which caused the other inmates to begin retaliating against Plaintiff again. Compl. pp. 3-4.

Plaintiff also alleges that Miller accused him of making unwanted sexual advances against other inmates. Compl. p. 4. In support of this allegation, Plaintiff refers to a Request to Staff Member (RTSM) form, dated December 13, 2013. Therein, Plaintiff states that Miller fabricated an incident report on April 9, 2013, alleging that Plaintiff was a predator. Plaintiff states that this resulted in him being placed in SMU. RTSM Form (Document # 1-1 p. 5).

---

[1] In a Request to Staff Member (RTSM) form attached to Plaintiff's complaint, he states that he beat up a gang member, William David Gunn, on December 22, 2006. He asserts that Gunn thought Plaintiff was going to tell on him for "deprivation of a Christmas present and an attempt to extort me of one hundred dollars," so Gunn made "a false statement of a perverted nature" against Plaintiff and Plaintiff beat him up. See RTSM Form (Document # 1-1 p. 5).

In making these allegations, Plaintiff also refers to a grievance from December 31, 2013. Inmate Grievance Form (KRCI-1787-13) (Document # 1-1 p. 4). Plaintiff states that the grievance is a "Harassment Complaint against Correctional Officer Robert Miller" because Miller "grudgingly fabricated an Incident Report alleging me a predator" on April 9, 2013. In this grievance, Plaintiff list several events beginning in approximately October 2011. Apparently, Miller instructed Plaintiff to stay away from the laundry room. This caused Plaintiff to call Miller "a few choice words, obscenities and profanities" and Miller responded by indicating that he wanted Plaintiff "out of [his] house." Then, in early 2012, another "associate" falsely accused Plaintiff. The "associate," named "Kennith Harget," made a report to Miller that Plaintiff threatened to beat up Harget. Miller charged Plaintiff with threatening an employee and Miller alleged that Plaintiff was a predator. At the end of this grievance, Plaintiff again states that Miller fabricated an incident report on April 9, 2013, alleging Plaintiff to be a "predator." Plaintiff states that this slandered him, and resulted in him being placed in SMU on security detention status. Id.

Plaintiff alleges that Defendant Officer Rennick attacked him, called him obscenities and threatened to call Columbia to tell someone that Plaintiff was "a PREA."[2] Compl. p. 4. Plaintiff stated he wrote a grievance concerning this matter on June 4, 2013. Inmate Grievance Form (KRCI-0794-13) (Document # 1-1 p. 7). The grievance form also states that "Riddeck" came to Plaintiff's cell in SMU, cursed Plaintiff out, and told Plaintiff he was going to report Plaintiff to "Columbia" as a "PREA". Plaintiff stated he was being verbally abused, and that his "name has been scandalized from 2007." Id.

Plaintiff alleges that Defendant Warden Reynolds failed to train her guards properly and

---

[2]PREA stands for Prison Rape Elimination Act. See 42 U.S.C. § 15601 et seq.

professionally, and several officers were forced to resign due to an alleged ring of sexual misconduct among the officers. Compl. p. 5. Plaintiff also alleges that Reynolds failed to properly train the officers to prevent inmates from enduring torment and retaliation. Compl. p. 5. Plaintiff refers to his grievance against Miller, discussed above, as evidence of Reynolds' administrative negligence and failure to train. Inmate Grievance Form (KRCI-1787-13) (Document # 1-1 p. 4).

Finally, Plaintiff alleges that Defendant Rembert, in her capacity as ICC Chairperson, scandalized his name by accusing him of being a sexual predator on June 25, 2013, which, he alleges, put him in a substantial risk of serious physical or psychological harm.

In his relief section, Plaintiff asserts

> The ICC and the warden made a final decision and wrongfully judged me, without first, plainly, explaining procedure, without giving me a reasonable opportunity to be heard. In which, I'm now looked upon "in total disrespect." I'm being regarded as a pervert. Therefore, I want them to pay for the humiliation I've suffered for their wrongdoing.
> I want them to be made to pay for the 13 months that I suffered wrongful imprisonment on S.D. where I was tormented with taunts and humiliated every day for 13 months.

Compl. p. 7.

### III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming

forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### IV.  DISCUSSION

#### A.  42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere

conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

**B.     Exhaustion of Administrative Remedies**

Defendants argue that Plaintiff failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C.1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001)

(exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3 d 718 (7th Cir.2001) (exhaustion required even though Plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to Plaintiff).

Defendants attach the declaration of Kimberly Hill, the Inmate Grievance Administrator for the Inmate Grievance Branch of the SCDC, in which she explains the inmate grievance procedure for the SCDC:

> The SCDC inmate grievance procedure is basically a three-step process. First, an inmate must attempt to resolve the issue through an informal resolution by submitting a Request to Staff Member Form. This attempt at an informal resolution is a prerequisite for filing most Step 1 grievances. An informal resolution is not necessary when appealing a disciplinary conviction or a custody reduction.
>
> Next, the inmate would file a Step 1 grievance by filling out an Inmate Grievance Form 10-5. The Step 1 grievance form must be submitted within five (5) days of the alleged incident.
>
> Thereafter, if the inmate is not satisfied with the response to his Step 1 grievance, the inmate must appeal that response by submitting a Step 2 grievance form to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response to the Step 1 grievance. The response to the Step 2 grievance, or appeal, is considered to be SCDC's final agency decision on the issue.
>
> If an inmate's Step 1 grievance is returned unprocessed the inmate will have the opportunity to either re-file a properly filled out grievance, or the inmate can appeal the unprocessed grievance to the Branch Chief of the Inmate Grievance Branch within ten (10) days of the grievance being returned to the inmate unprocessed.

Hill Decl. ¶¶ 4-8 (Ex. 1 to Def. Motion).

A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

As discussed above, Plaintiff attached several grievances to his complaint. In one grievance, dated April 28, 2013, Plaintiff complains that he was attacked on April 9, 2013, and he had complained to several staff members, including Miller and "Riddeck,"[3] prior to the attack that he was being threatened, yet they failed to do anything about it. See Inmate Grievance Form Step 1 (KRCI-0615-13). However, SCDC policy, as set forth above by Kimberly Hill, requires an inmate to file a step one grievance within five days of the date of the incident. This grievance, filed on April 28, 2013, was untimely. Furthermore, he failed to file a step two grievance following the response from the Inmate Grievance Coordinator. See Hill Decl. ¶ 10 and Ex. A. Therefore, this grievance is insufficient to exhaust Plaintiff's administrative remedies with respect to any claims against Miller or Rennick.

In another grievance, filed June 4, 2013, Plaintiff complains of "Riddeck" coming to his cell on May 3, 2013, cussing him out, calling him a "PREA," and threatening to call people in Columbia about him. See Inmate Grievance Form Step 1 (KRCI-0794-13). The warden responded by informing Plaintiff that the grievance had been forwarded to the Division of Investigations, and the "time frames stated for grievances are not applied to grievances sent to the Division of Investigations. At some time in the future you will be notified of the decision on this grievance." Id. The Warden responded to the grievance on August 2, 2013, after it had been returned from the Division of Investigations. See Hill Decl. ¶ 11 and Ex. B. Plaintiff received the Warden's response on August 7, 2013. Id. The Warden indicated that Sgt. Rennick had been interviewed and had denied Plaintiff's allegations. Id. The Warden denied Plaintiff's request for action (that Rennick be fired, and that Plaintiff be given a consultation with officials) because no evidence was found to support

---

[3]Plaintiff appears to refer to Defendant Ofc. Sgt. Rennick as "Riddeck" in his grievances.

-8-

Plaintiff's allegations. Id. The step one grievance was untimely. In addition, Plaintiff did not file a Step 2 grievance upon receipt of the Warden's decision. Id. Therefore, this grievance is insufficient to exhaust Plaintiff's administrative remedies with respect to any claims against Defendant Rennick.

In the final grievance attached to Plaintiff's complaint, dated December 31, 2013, Plaintiff addresses the alleged harassment and fabricated incident report by Defendant Miller on April 9, 2013, (and various events leading up to that date), which resulted in Plaintiff being placed in the special management unit (SMU) on security detention (S.D.) status. See Inmate Grievance Form Step 1 (KRCI-1787-13). The warden responded to Plaintiff's step one grievance on January 10, 2014 (received by Plaintiff on January 24, 2014), stating that Plaintiff's complaints had been reviewed and the warden saw no need to change the status of his placement in security detention. See Hall Decl. Ex. C. The warden notified Plaintiff that he could appeal his decision within five days of his receipt of the decision. Id. Plaintiff filed a step two grievance on January 27, 2014. Plaintiff's grievance was denied at the step two level as well. See Inmate Grievance Form Step 2 (KRCI-1787-13). Defendants argue that, although Plaintiff completed both the step one and step two levels of the grievance process, this grievance, filed approximately eight months after the April 9, 2013, incident, was untimely. However, the grievance was not treated as untimely. Rather, Plaintiff's claims were reviewed and the warden notified Plaintiff that he could appeal the unfavorable decision, which he did. One of the purposes of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit." Jones v. Bock, 549 U.S. 199, 219, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Here, this end was met as fully as if the initial step one grievance had been timely filed. Therefore, the court will address

the merits of Plaintiff's claim against Defendant Miller arising from the alleged harassment and fabricated incident report by Defendant Miller on April 9, 2013, (and various events leading up to that date), which resulted in Plaintiff being placed in the special management unit (SMU) on security detention (S.D.) status.[4]

### C.     Claims against Defendant Miller

In his sworn declaration, Defendant Miller states that SCDC has promulgated a policy in accordance with the Prison Rape Elimination Act (PREA), 42 U.S.C. § 15601 et seq., which requires staff to report sexual abuse of any kind. Miller Decl. ¶¶ 5-7 (Ex. 5 to Def. Motion); Barkley Decl. ¶¶ 5, 8-10 (Ex. 3 to Def. Motion); 28 C.F.R. § 115.61. A staff member's failure to report incidents of sexual abuse or sexual harassment may result in corrective or disciplinary action. Miller Decl. ¶ 7; Barkley Decl. ¶ 6; 28 C.F.R. 115.76.

On April 9, 2013, Miller took an incident report from Plaintiff after Plaintiff informed him that he was scared because a Muslim inmate was after him because he "was trying to get with one of the young Muslim brothers." Miller Decl. ¶ 8 and Ex. B. Plaintiff told Miller that he had not done anything with the inmate but that he had tried.[5] Miller Decl. ¶ 10 and Ex. B. Plaintiff had

---

[4]Kimbery Hill states in her declaration and attaches an exhibit showing that, although Plaintiff filed several other grievances in 2013, all of the grievances except for those discussed above were returned to Plaintiff unprocessed. Hill Decl. ¶¶ 15-16 and Ex. D. Therefore, none of the issues raised in this action except for Plaintiff's claim that Defendant Miller fabricated an incident report against him on April 9, 2013, have been properly exhausted, and, thus, summary judgment is appropriate on the claims against Reynolds, Rembert and Rennick, and any claims against Miller other than those arising from the alleged fabricated incident report on April 9, 2013.

[5]Miller did not refer to Plaintiff as a sexual predator in the April 9, 2013, incident report. Miller Decl. ¶ 10. However, he did reference another report he had done in the past concerning Plaintiff in reference to him forcing himself on other inmates. Miller Decl. ¶ 11. On December 1, 2011, Miller completed an incident report based upon written statements from two other

requested that he be transferred out of that dorm, but given past accusations of Plaintiff forcing himself on young inmates, Miller recommended that Plaintiff be removed from the general population. Miller Decl. ¶ 16 and Ex. B. However, Miller did not have the authority to place Plaintiff in SMU himself. Miller Decl. ¶ 16. That day, Plaintiff was removed from the general population and placed in SMU for Pre-Hearing Detention (PHD) in order to maintain the integrity of an investigation. Reynolds Decl. ¶ 12 and Ex. E. (Ex. 4 to Def. Motion).

The following day, April 10, 2013, Warden Cecilia Reynolds received a written statement from another inmate in which the inmate recounted comments made by Plaintiff of a sexual nature and that Plaintiff had referred to himself as a "predator" and that he does not "get hunted, he does the hunting." Reynolds Decl. ¶ 10 and Ex. C. Reynolds forwarded Miller's incident report and the inmate's statement to John Barkley, the PREA Coordinator for SCDC. Reynolds Decl. ¶ 11 and Ex. D.

On April 15, 2013, the Institutional Classification Committee (ICC) met and concurred that Plaintiff should remain in SMU pending any PREA investigation. Reynolds Decl. ¶ 13 and Ex. F. Thereafter, beginning May 9, 2013, Plaintiff's status in SMU was reviewed every seven days. Reynolds Decl. ¶ 14 and Ex. F. On June 25, 2013, Reynolds made the decision in her discretion to convert Plaintiff's detention status in SMU from PHD to Security Detention (SD). Reynolds Decl. ¶ 15 and Exs. F, G. On June 28, 2013, the ICC met and recommended that Plaintiff remain in SMU on SD at Level 2. Reynolds Decl. ¶ 16 and Exs. F, H. Thereafter, Plaintiff underwent regular 30-day reviews by the ICC, with all of the reviews up through June 26, 2014, resulting in a recommendation

---

inmates that Plaintiff was trying to have sex with an inmate and threatened to beat them up if they told Miller. Miller Decl. ¶¶ 11-13 and Ex. C, D.

that Plaintiff remain in SMU on SD.  Reynolds Decl. ¶ 17, Exs. F, I.

In his complaint, Plaintiff alleges that he is suing Miller for "slander, harassing an inmate, and scandalizing his name." Compl. p. 6.  However, these claims do not give rise to constitutional violations actionable under § 1983.  See, e.g., Fleming v. West Virginia, No. 5:08CV267, 2009 WL 960217, at *3 (S.D.W.Va. Apr. 7, 2009) ("Section 1983 provides a remedy for violations of all rights, privileges, or immunities secured by the Constitution and laws of the United States.... Plaintiff's claim that Defendants defamed his character fails to allege a violation of a federally protected right." (internal brackets and quotation marks omitted) (citing, inter alia, Paul v. Davis, 424 U.S. 693, 712 (1976));  Henslee v. Lewis, 153 Fed. Appx. 178, 180 (4th Cir.2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983.").  While a verbal threat of physical harm combined with action apparently designed to carry out that threat may state an Eighth Amendment claim, see Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir.1978), Plaintiff presents no such facts.  Thus, Plaintiff's claims of slander, harassment and scandalizing his name fail.

Further, to the extent Plaintiff alleges that Miller violated his due process rights with respect to his placement in SMU[6], that claim fails as well.  The evidence reveals that Miller did not make the decision to place Plaintiff in SMU, nor was he involved in any of the subsequent decisions that Plaintiff remain in SMU.  Rather, the ICC met and concurred that Plaintiff should remain in SMU pending any PREA investigation.  Later, Warden Reynolds, in her discretion, converted Plaintiff's status in SMU to SD.  Although Miller prepared an incident report and recommended that Plaintiff be removed from the general population, the decision to place Plaintiff in SMU on SD status was

---

[6] See Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005).

based upon an investigation into Miller's incident report as well as a statement from an inmate regarding sexual comments made by Plaintiff and that Plaintiff referred to himself as a predator and Reynolds' knowledge sexual abuse and/or sexual harassment allegations made by other inmates. Reynolds Decl. ¶ 15.  Even if Miller had made the decision to place Plaintiff in SMU, Plaintiff fails to show that his placement in SMU created "an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  Therefore, summary judgment is proper as to any due process claim Plaintiff may have raised against Miller.

Because Plaintiff fails to present evidence sufficient to create an issue of fact as to any constitutional violation by Miller, summary judgment is appropriate as to Plaintiff's § 1983 claim.[7]

## V. CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 37) be granted and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 27, 2016
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[7]To the extent Plaintiff has raised any state law claims, it is recommended that the district judge decline to exercise supplemental jurisdiction over them. See 28 U.S.C. § 1367(c).